IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ALONZO UNTHANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20CV616 |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Alonzo Unthank ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on May 18, 2017, alleging a disability onset date of November 18, 2016 in both applications. (Tr. at 15, 289-301.)[2] His applications were denied initially (Tr. at 70-151) and upon reconsideration (Tr. at 152-95, 198-

---
[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue the suit by reason of the last sentence of section 205(g) of the Social Security Act § 405(g).
[2] Transcript citations refer to the Sealed Administrative Record [Doc. #10].

226). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 227-41.) On March 15, 2019, Plaintiff, along with his attorneys, attended the subsequent video hearing, during which both Plaintiff and an impartial vocational expert testified. (Tr. at 15.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 24), and, on May 18, 2020, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II. <u>LEGAL STANDARD</u>

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hancock v. Astrue</u>, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1993) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

2

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 17.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> status post motor vehicle accident, blunt trauma, cervical spine degenerative disc disease and fractures, neurocognitive disorder, and depression.

(Tr. at 17.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 17-19.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform sedentary work with the following, further limitations:

> [Plaintiff can] frequently reach overhead, reach in all directions, and handle; occasionally climb ramps and stairs; no climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; cannot work

5

> at unprotected heights or be exposed to dangerous moving mechanical parts; only occasional exposure [to] extreme cold and vibration; the claimant needs a cane to ambulate distances greater than 200 feet; after 45 minutes of sitting, the claimant can stand for one to two minutes without going off-task or leaving the workstation; limited to simple routine tasks; and can tolerate only occasional changes in the work setting.

(Tr. at 19.) Based on this determination, the ALJ found at step four of the analysis that Plaintiff could not perform any of his past relevant work. (Tr. at 22.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 23-24.)

Plaintiff now contends that, in assessing his RFC, the ALJ failed to properly consider the effects of Plaintiff's limitations in maintaining concentration, persistence, and pace. In particular, Plaintiff argues that the ALJ (1) failed to account for Plaintiff's moderate limitations in concentration, persistence, and pace in the RFC assessment in accordance with <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015), and (2) failed to properly evaluate the relevant opinion evidence relating to Plaintiff's mental impairments in accordance with 20 C.F.R. §§ 404.1520c and 416.920c, particularly with regard to the limitations in concentration, persistence and pace. After a thorough review of the record, the Court finds that neither of these related errors merit remand.

A. Concentration, Persistence, and Pace

Plaintiff first argues that the ALJ failed to properly address the effects of Plaintiff's moderate limitations in maintaining concentration, persistence, and pace. As noted above, the ALJ determined at step three of the sequential analysis that Plaintiff has moderate limitations in this functional area. In <u>Mascio v. Colvin</u>, the Fourth Circuit explained that, where moderate

6

limitations in concentration, persistence and pace are reflected at step three, the ALJ should address those limitations in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work. The Fourth Circuit specifically held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Mascio, 780 F.3d at 638 (quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted). However, as previously noted in other cases in this District, the Fourth Circuit's decision in Mascio

> does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . .
>
> An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Tolbert v. Colvin, 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016) (finding that RFC limitations to "simple, routine, repetitive tasks with simple, short instructions, in a job that required making only simple, work-related decisions, involved few workplace changes,

7

and required only frequent contact with supervisors, co-workers, or the public" sufficiently accounted for a plaintiff's moderate limitations in concentration, persistence, or pace in light of the ALJ's explanation throughout the administrative decision) (quoting Jones v. Colvin, No. 7:14CV273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015)); see also Sizemore v. Berryhill, 878 F.3d 72, 80–81 (4th Cir. 2017) (rejecting the plaintiff's argument under Mascio where the ALJ relied on the opinion of the state agency psychologist that, notwithstanding moderate limitations in concentration, persistence, and pace, the plaintiff could sustain attention sufficiently to perform simple, routine, repetitive tasks with additional limitations); Shinaberry v. Saul, 952 F.3d 113, 121-22 (4th Cir. 2020) (same, and noting that Mascio "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC").

In the present case, as in Mascio, the ALJ found moderate limitations in concentration, persistence, or pace at step three of the sequential analysis. (Tr. at 18.) Later in the sequential analysis, the ALJ formulated a mental RFC limiting Plaintiff to "simple routine tasks." (Tr. at 19.) The ALJ also further determined that Plaintiff "can tolerate only occasional changes in the work setting." (Tr. at 19.) Plaintiff now argues that, in making these RFC findings, the ALJ did not fully account for Plaintiff's ability to stay on task in light of his moderate difficulties with concentration, persistence, or pace. Plaintiff further contends that the ALJ failed to "build an accurate and logical bridge from [that] evidence to his conclusion" so that the Court may afford Plaintiff meaningful review of the SSA's ultimate findings. Woods, 888 F.3d at 694 (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)).

However, as set out above, remand is not required under Mascio where the ALJ's discussion of, and reliance on, substantial record evidence adequately explains why the plaintiff's moderate limitation at step three did not translate into any additional RFC restrictions. In this case, the ALJ considered medical opinion evidence from a psychological consultative examiner, David Johnson, M.A., and two State agency psychological consultants, Drs. Linda Tyrell and Bryan Grover. (Tr. at 20-21.) Notably, all three offered very similar view of Plaintiff's concentration, persistence, and pace limitations.

Mr. Johnson, supervised by licensed psychologist Julia Brannon, conducted a psychological consultative examination of Plaintiff on January 23, 2018. Notably, Plaintiff reported to Mr. Johnson "trouble concentrating sometimes" (Tr. at 609), and endorsed "some memory trouble" since suffering a concussion in a November 2016 car crash (Tr. at 608). Overall, Mr. Johnson concluded, in pertinent part, that Plaintiff

> appears capable of understanding instructions adequately to perform simple, routine, and repetitive tasks. He would likely have trouble keeping up with others in some job settings, however. He appears to have some memory trouble and he also appears to have some cognitive deficits. It is not clear how much of a decrease is noted overall compared to how he probably functioned prior to the head injury. . . . A referral to a Vocational Rehabilitation is recommended at some point in the future if he is medically cleared to work in some capacity.

(Tr. at 611.) This opinion evidence was considered by the ALJ, who noted that "Mr. Johnson opined that [Plaintiff] was capable of simple tasks but would have trouble keeping up with others in the workplace." (Tr. at 20.) The ALJ also noted that Mr. Johnson's evaluation reflected a "low IQ score" and "difficulty keeping up with his peers," and concluded that "[t]hese findings in the evidence tend to infer that the claimant would have problems in understanding and his concentration." (Tr. at 21.)

Mr. Johnson's opinion was also reviewed and addressed in the opinions of the State agency psychological consultants. (Tr. at 106, 115, 117.) Dr. Tyrell, who offered her opinion at the initial level (Tr. at 117, 123-24), found that Plaintiff had moderate limitations with respect to concentration, persistence or pace (Tr. at 116). She posited that, "[w]hile [Plaintiff's] attention and concentration may vary, they are sufficient for the completion of simple tasks." (Tr. at 123.) More significantly, she opined that "[p]ersistence and pace may occasionally fall below an expected production rate, however, [Plaintiff] should be capable of completing simple tasks within a reasonable period of time." (Tr. at 123.) Thus, Dr. Tyrell specifically linked Plaintiff's limitations in persistence and pace with his ability to perform simple tasks, and Dr. Tyrell concluded that while Plaintiff's pace may occasionally fall below a production rate he would still be able to perform tasks within a reasonable time if limited to simple tasks. She further found Plaintiff "capable of adapting to relatively minor changes in an otherwise routine and stable work setting." (Tr. at 124.) She concluded that Plaintiff's limitations were not so severe as to preclude all work activity (Tr. at 118) and that Plaintiff has "the mental capacity to perform work-related tasks" with these limitations (Tr. at 124). At the reconsideration level, Dr. Grover likewise reviewed Mr. Johnson's evaluation (Tr. at 160, 162-63) and reached the same conclusions as Dr. Tyrell with regard to Plaintiff's concentration and pace limitations (Tr. at 162, 169-70).

In setting the RFC, the ALJ expressly adopted the findings of the State agency consultants with regard to Plaintiff's concentration limitations. (Tr. at 21.) The ALJ also expressly noted the consistency of the State agency findings in these areas with the opinion of consultative examiner David Johnson. (Tr. at 21.) All of these providers acknowledged

10

Plaintiff's problems with understanding and concentration and found him limited to simple tasks as a result. Moreover, Drs. Tyrell and Grover specifically explained that Plaintiff's difficulties with concentration and pace did not further limit his ability to perform simple tasks (Tr. at 123, 169). The ALJ adopted these findings (Tr. at 21) and then in setting the RFC concluded that:

> [Plaintiff] is limited to simple tasks, and only occasional changes at work based on his testimony and the objective medical evidence regarding his low cognitive ability and memory loss.

(Tr. at 22.) Thus, the ALJ specifically addressed Plaintiff's mental limitations and explained the provisions of the RFC addressing those limitations, supported by substantial evidence based on the opinion evidence specifically discussed and relied upon by the ALJ. Plaintiff contends that this RFC fails to include any limitation to non-production paced work to address Plaintiff's limitations in concentration and pace. However, the ALJ did not find that such a limitation was necessary, and instead specifically relied on the opinion evidence finding that Plaintiff had persistence and pace limitations but could still perform simple tasks in a reasonable time, thus specifically linking the two and providing evidentiary support for the ALJ's similar conclusion that Plaintiff's mental impairments could be addressed by the limitations to simple tasks and only occasional changes at work.[5] In reaching this conclusion, the ALJ relied on her own analysis of the evidence and the opinions of the state agency psychological consultants, as discussed above. Thus, the ALJ considered and discussed the

---

[5] As noted by the Commissioner, even if Plaintiff could show an error in the ALJ's failure to include a prohibition on production-paced work in the RFC, any such error would be harmless, as none of the representative occupations identified by the Vocational Expert mention production levels or a production pace. (Def. Br. at 10, n.2.) The Court need not consider this further, as the ALJ's decision, read as a whole, provides sufficient explanation for the RFC that parallels supporting evidence specifically relied upon and adopted by the ALJ, as discussed above.

record and built a logical bridge between the evidence in the record and the RFC. In these circumstances, the Court finds no basis for reversal under Mascio.

B.   Opinion Evidence

In a related argument, Plaintiff contends that the ALJ failed to sufficiently consider the medical opinion evidence in accordance with the regulations, particularly the opinion of Mr. Johnson with respect to Plaintiff's limitations in concentration, persistence, and pace. Under the applicable regulations for claims filed on or after March 27, 2017,[6]

> [The ALJ] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. . . . .
>
> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.
>
> (3) Relationship with the claimant . . . [which includes]: (i) Length of the treatment relationship. . . (ii) Frequency of examinations. . . . (iii) Purpose of the treatment relationship. . . . (iv) Extent of the treatment relationship. . . [and] (v) Examining relationship. . . .
>
> (4) Specialization. The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to

---

[6] In 2017, the Social Security Administration revised its regulations governing the analysis of opinion evidence. Under the new regulations, for claims filed on or after March 27, 2017, decision-makers must consider the persuasiveness of each opinion as set out above.

12

> become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.
>
> (5) Other factors. . . . This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. . . . .

20 C.F.R. § 404.1520c(a) and (c). Thus, in weighing the opinion evidence under the revised regulations, all medical source opinions, including those from both treating and non-treating physicians, must be considered using the factors listed in paragraphs (c)(1) through (c)(5) of § 404.1520c. The regulations specifically provide that the most important factors when evaluating the persuasiveness of an opinion are the first two: supportability and consistency. 20 C.F.R. § 404.1520c(a), 404.1520c(c)(1)-(c)(2)

Plaintiff now argues, however, that the ALJ failed to articulate how persuasive she found Mr. Johnson's opinions. Plaintiff contends that this failing further renders the ALJ's mental RFC finding unsupported by substantial evidence. However, the ALJ did, in fact, discuss the persuasiveness of Mr. Johnson's opinions. While she did so in the context of the medical opinion evidence as a whole rather than in a dedicated paragraph, the ALJ's adoption of Dr. Johnson's findings is clear:

> In terms of the DDS mental health opinions, I have adopted their findings that the claimant has moderate problems with understanding and concentration. The consultative examination found a low IQ score. The examiner noted that the claimant would have difficulty keeping up with his peers. Also, the claimant has a history of hallucinations after his accident. These findings in the evidence tend to infer that the claimant would have problems in understanding and his concentration.

(Tr. at 21.) Thus, the ALJ noted that Mr. Johnson's evaluation reflected a "low IQ score" and "difficulty keeping up with his peers," and concluded that "[t]hese findings in the evidence tend to infer that the claimant would have problems in understanding and his concentration." (Tr. at 21.) The ALJ then went on to state that Plaintiff "is limited to simple tasks, and only occasional changes at work based on his testimony and the objective medical evidence regarding his low cognitive ability and memory loss." (Tr. at 22.)

In challenging this determination, Plaintiff emphasizes the ALJ's failure to include further RFC findings to account for Plaintiff difficulty keeping up with his peers. However, as set out above, Mr. Johnson specifically posited that Plaintiff "would likely have trouble keeping up with others *in some job settings.*" (Tr. at 611) (emphasis added). He did not indicate that Plaintiff would have difficulty with pace in all jobs, and the two State Agency psychologists reviewing Mr. Johnson's evaluation relied on it to find that Plaintiff's moderate limitations in concentration and pace would not preclude him from performing work involving only simple tasks, as set out at length above. The ALJ relied on and adopted the State Agency determinations, and concluded similarly with respect to Mr. Johnson's evaluation and the ultimate RFC determination. (Tr. at 20-22.) This is not a case where the ALJ failed to consider or evaluate an opinion, and the ALJ specifically analyzed Mr. Johnson's report at multiple points in the decision. In addition, the ALJ analyzed Mr. Johnson's report in the context of the subsequent opinions from the State Agency psychological consultants, which the ALJ relied on and adopted. In sum, the ALJ reviewed the evidence, explained her decision, explained the reasons for her determination, and that determination is supported by substantial

evidence in the record. Plaintiff has not identified any errors that require remand, and Plaintiff's Motion for Judgment on the Pleadings should therefore be denied.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #12] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #14] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 18th day of August, 2021.

                                                    /s/ Joi Elizabeth Peake
                                              United States Magistrate Judge

15

Case 1:20-cv-00616-TDS-JEP   Document 17   Filed 08/18/21   Page 15 of 15